UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICAH DIONTE MELCHIZEDEK                              MOVANT/DEFENDANT


v.                                          CRIM. ACTION NO. 3:07-CR-125-CRS
                                            CIV.  ACTION NO. 3:16-CV-00355-CRS


UNITED STATES OF AMERICA                                        DEFENDANT


**FINDINGS OF FACT, CONCLUSIONS OF LAW**
**AND RECOMMENDATION**

This matter comes before the Court to consider the successive motion of the movant,

Micah Dionte Melchizedek, who pursuant to 28 U.S.C. § 2255, has moved to vacate, set aside or

correct his federal sentence of 180 months of imprisonment.   Melchizedek in November 2008

pled guilty pursuant to the terms of a Rule 11(c)(1)(C) plea agreement to various drug trafficking

charges and to the charge of being a felon in possession of a firearm in violation of 21 U.S.C. §

841(a)(1) and 18 U.S.C. § 922(g), respectively.[1]   Under the terms of his plea agreement with the

United States, Melchizedek agreed that he would plead guilty and waive his right to appeal or

collaterally attack his 180 month sentence.[2] The same plea agreement in Part B at paragraph 32

reflected the criminal history of a prior conviction by plea of guilty in April 2001 to three felony

counts of first-degree wanton endangerment in violation of Kentucky Revised Statutes (KRS)

508.060.

---

[1] Counts 1-6 of the indictment returned against Melchizedek, then known as Micah Dion Gasaway, on Oct. 1, 2007,
charged that on Dec. 1, 2006, in Jefferson County, Kentucky, Gasaway knowingly and intentionally violated 21
U.S.C. §841(a)(1) by the distribution of, or possession with intent to distribute, various amounts of controlled
substances that included heroin, cocaine, cocaine base and marijuana. Count 7 charged Gasaway, a convicted felon,
with the possession of a firearm in violation of 18 U.S.C. §922(g)(1). Counts 8 and 9 of the indictment were both
forfeiture counts. (DN 1, Indictment). Gasaway pled guilty to counts 1-9 of the indictment pursuant to his plea
agreement (DN 50, plea agreement).
[2] (DN 50, Plea Agreement, p. 6, ¶ 12).

1

The District Court, over the objection of the movant, on February 27, 2009 sentenced Gasaway (now Melchizedek) to the aforementioned 180 months on Counts 1-4 and 5 of the indictment, along with 60 months on Count 6, and 120 months on Count 7 with all sentences to be served concurrently for a total term of 180 months imprisonment.[3]  The District Court rejected both Gasaway's oral motion to withdraw his plea of guilty and his subsequent motion to reconsider denial of the motion. In both instances, Gasaway based his request to withdraw his plea on the alleged coercion of his family members, who he claimed forced him to plead guilty contrary to his wishes.[4]

Gasaway took a direct appeal from the order that denied his motion to withdraw his guilty plea.[5]  He also filed a motion in the District Court for retroactive application of the sentencing guidelines to reduce his sentence for the crack cocaine portion of the drug charges pursuant to 18 U.S.C. § 3582.[6] The District Court denied the motion for reduction of sentence in April 2010.[7] Subsequently, the United States Court of Appeals for the Sixth Circuit entered an opinion on August 31, 2011 that affirmed the decision of the District Court to deny Gasaway's motion to withdraw his plea of guilty.[8] While his appeal was pending in the Sixth Circuit, Gasaway filed an initial, and premature, § 2255 motion to vacate, set aside or correct his sentence.[9] The District Court dismissed this first § 2255 motion without prejudice on January 21, 2011.[10]

---

[3] (DN 56, Judgment).
[4] (DN 61, Motion for Reconsideration; DN 72, Order Denying Motion for Reconsideration).
[5] (DN 62, Notice of Appeal).
[6] (DN 80, Motion for Reduction of Sentence).
[7] (DN 84, Order Denying Motion to Reduce Sentence).
[8] (DN 89, 6th Cir. Opin.  in *United States v. Gasaway*, Appeal No 09-5340 (6th Cir. Aug. 31, 2011),
[9] (DN 86, Motion to Vacate).
[10] (DN 88, Order of Dismissal without Prejudice; DN 87, Memorandum Opinion in Support).

Gasaway filed a renewed § 2255 motion to vacate, set aside or correct in April 2012.[11] This motion to vacate attempted to challenge the knowing and voluntary nature of Gasaway's 2008 guilty plea based upon a claim of ineffective assistance of trial counsel. Specifically, Gasaway argued that his appointed trial counsel had failed to object to his classification as an armed career criminal based on his prior 2001 conviction on three counts of first-degree wanton endangerment, which Gasaway insisted in light of Kentucky statutory law did not satisfy the definition of a "crime of violence" under 28 U.S.C. § 924(c)(3). Had his attorney challenged the pre-sentence report in this respect, Gasaway insisted that he would not have entered into the plea agreement and the resulting plea of guilty.

The United States moved to dismiss this prior motion to vacate based on the terms of ¶ 12 the plea agreement by which Gasaway voluntarily waived his statutory right to a direct appeal and his right to bring a collateral attack by way of 28 U.S.C. § 2255.[12] The government argued along these lines that having accepted the benefits of the plea agreement, which became a binding contract upon its acceptance by the District Court, Gasaway could not avoid the consequences of his binding promises including the waiver provisions of the agreement. The undersigned Court agreed and entered a Report and Recommendation in August 2012, which recommended that the renewed 2255 motion to vacate be dismissed based upon the knowing and voluntary decision of Gasaway to waive his right to bring such a collateral attack. [13] As an aside, the Court further noted in its Recommendation that an identical argument involving prior Kentucky convictions for wanton endangerment had then been recently rejected in *United States v. Meeks*, 664 F.3d 1067, 1068-72 (6th Cir. 2012).

---

[11] (DN 93, Renewed Motion to Vacate).
[12] (DN 97, Motion to Dismiss).
[13] (DN 101, Report and Recommendation).

The District Court in October 2012 entered a memorandum opinion and order that adopted the recommendation of the Magistrate Judge and dismissed Gasaway second 2255 motion to vacate with prejudice based on Gasaway's knowing and voluntary waiver of his right to collaterally attack his sentence .[14] Gasaway did not take an appeal from this Order.  He did, however, appeal the separate order of the District Court that denied his motion for retroactive application of the crack cocaine sentencing guidelines.[15] The Sixth Circuit subsequently affirmed the District Court on the crack cocaine resentencing issue.[16] Gasaway then successfully moved for the District Court to recognize his name change to Micah Dionte Melchizedek.[17]

On June 6, 2016, a panel of the Sixth Circuit granted Melchizedek leave to file a second or successive application for relief under 28 U.S.C. § 2255(h).  As the basis for granting the motion, the Sixth Circuit panel explained that:

> *Johnson* announced a new substantive rule of constitutional law made categorically retroactive to cases on collateral review by the Supreme Court. *Welch v. United States*, 136 SCt. 1257, 1268 (2016). Moreover, we have held recently that "*Johnson*'s rationale applied with equal force to the Guidelines' residual clause." *United States v. Pawlak*, __F.3d__, No. 15-3566, 2016 WL 2802723, at *4 (6th Cir. May 13, 2016).

> In the wake of *Johnson*, Melchizedek's Kentucky convictions for fleeing and eluding police and wanton endangerment may no longer be qualifying crimes of violence for purposes of the career-offender enhancement. *See Ball v. United States*, 135 S. Ct. 2933, 2933 (2015) (Mem.) (vacating this court's determination that a Kentucky conviction for fleeing and eluding police was a qualifying conviction for a crime of violence under the residual clause); *United States v. Meeks*, 664 F.3d 1067, 1070–71 (6th Cir. 2012) (concluding that a Kentucky conviction for wanton endangerment was a conviction for a crime of violence under the residual clause). Thus, Melchizedek has made a prima facie showing that he may be entitled to relief.

---

[14] (DN 105, Memorandum opinion and Order Dismissing Motion to Vacate).

[15] (DN, 106, Order Denying Retroactive Application; DN 108, Notice of Appeal)

[16] (DN 109, Order Affirming Denial of § 3582 Sentence Reduction; 110, Mandate of the Sixthth Circuit).

[17] (DN 111, Motion to Recognize Name Change; DN 112, Order granting Motion).

(DN 113, *In re Micah Dion[te] Melchizedek*, No. 15-6448 at p. 3 (6th Cir. June 6, 2016)).

Melchizedek then filed his current motion to vacate on June 22, 2016.[18]

Melchizedek argues in his motion, first, that the collateral attack waiver of ¶ 12 of his plea agreement, which the District Court previously enforced, should not be applied.  This is so, according to Melchizedek, because the waiver created an attorney conflict of interest for his court-appointed counsel, and is the result of essentially fraud by the government, which failed to disclose the conflict of interest created by barring post-conviction claims of ineffective assistance of counsel.

Further, Melchizedek insists that the "interests of justice" require the federal courts to reach the merits of his retroactive *Johnson* challenge to his sentencing enhancement as a "career offender" pursuant to U.S.S.G. §§ 4B1.1 and 4B1.2. Melchizedek argues that the situation in his own case is very similar to what occurred in *United States vs. Hogg*, 723 F.3d 730, 748 (6th Cir. 2013) wherein defense counsel was determined to be ineffective for his failure to anticipate at the time of sentencing the intervening decision in *Dorsey v. United States* 132 S.Ct. 2312 (2012).

Melchizedek continues in his second argument to maintain that in the light of *Johnson*, and its effect on the Sentencing Guidelines, he is no longer properly sentenced as a "career offender" under § 4B1.1 where his underlying state felony convictions for wanton endangerment only qualified as being a "crime of violence" because they all fell within the now unconstitutional residual clause of § 4B1.2(a).  Melchizedek argues that *Johnson* applies to the Sentencing Guidelines, given the identical nature of the residual clause language inserted in § 4B1.2(a)(2).

This conclusion, that *Johnson* challenges apply to the Sentencing Guidelines, has been reached in a number of federal circuit courts including the Sixth Circuit, according to

_____

[18] (DN 117, Successive Motion to Vacate).

Melchizedek.  *See, e.g., United States vs. Madrid*, 805 F.3d 1204 (10th Cir. 2016) ("The concerns

about judicial inconsistency that motivated the Court in *Johnson* lead us to conclude that the

residual clause of the Guidelines is also unconstitutionally vague."); *United States v. Darden*,

605 Fed.Appx. 545, 546 (6th Cir.2015) (*per curiam*) (holding a defendant could not receive an

enhanced sentenced under the residual clause of § 4B1.2(a)(2) following *Johnson*); *United States*

*vs. Townsend*, 638 Fed. Appx.  172, 177-78 (3rd Cir. 2016)(" The Government concedes that,

pursuant to *Johnson*, Townsend should not have been sentenced as a career offender. As a result,

the Government agrees with Townsend that remand for resentencing is appropriate. We agree.");

*Lucas vs. United States*, 162 F. Supp3d 883, 887 (D.S.D. 2016)(" In light of the nearly identical

language and interpretation of the residual clauses of the ACCA and the sentencing guideline,

the court finds the residual clause of U.S.S.G. § 4B1.2(a)(2) is unconstitutionally vague.").

Accordingly, he requests that his 151-month sentence be vacated and that he be re-sentenced

without the "career offender" enhancement of  U.S.S.G. §4B1.1.

     After Melchizedek filed his current motion to vacate, the United States successfully

moved to hold consideration of the motion in abeyance pending the outcome in *Beckles v United*

*States,* 136 S. Ct. 2510, 84 U.S.L.W. 3694 (June 27, 2016).[19] On March 6, 2017, the U.S.

Supreme Court rendered its decision in *Beckles v. United States*, ___ U.S. ___, 137 S.Ct. 886

(2007) holding that the Sentencing Guidelines "are not amenable to a vagueness challenge"

because they "do not implicate the twin concerns underlying vagueness doctrine – – providing

notice and preventing arbitrary enforcement."   *Beckles*, 137 S.Ct. at 894-95("[T]he advisory

Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause

and §4B1.2(a)'s residual clause is not void for vagueness." ).

---

[19] (DN 120, Motion to Hold in Abeyance; DN 121, Order Granting Motion).

In light of the ruling of the Supreme Court in *Beckles*, the Magistrate Judge ordered that Melchizedek's case be reopened and that the parties each file supplemental memoranda of law to address both *Beckles* and the viability of the plea agreement waiver argument after *United States v. Morrison*, ___ F.3d___, 2017 WL 360553 (6th Cir. Jan. 25, 2017).  The time for Melchizedek to file his supplemental brief has now expired without any brief being filed.  Likewise the time for the government's response has expired without a response being filed.  Accordingly, the Court shall sua sponte address the impact of *Beckles* on Melchizedek's successive § 2255 motion.

## CONCLUSIONS OF LAW

### I.
### Standard for Relief

A motion to vacate brought by a federal prisoner pursuant to 28 U.S.C. §2255 must set forth one or more of three possible grounds for relief.  *See United States v. Doyle*, 631 F.3d 815, 817-18 (6th Cir. 2011); *Calloway v United States*, 3:13CV-75-CRS/3:07CR-25-CRS, 2016 WL 3094028 at *4 (W.D. Ky. June 1, 2016)(same).  The motion may allege an error of constitutional magnitude, allege that the defendant's sentence fell outside the statutory limits, or maintain that a fundamental error of fact or law occurred that rendered the entire criminal proceedings invalid. Id.(citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).  *See also, United States v. Addonizio*, 442 U.S. 178, 185-86 (1979).  "A § 2255 motion may not be used to re-litigate an issue raised on appeal absent highly exceptional circumstances." *Dupont v. United States,* 76 F.3d 108, 110 (6th Cir. 1996). Additionally, an issue which has been defaulted at trial or on direct appeal may not be litigated in a § 2255 collateral attack unless the defendant shows cause and actual prejudice. *Murr v. United States*, 200 F.3d 896, 900 (6th Cir. 2000), citing

7

*United States v. Frady*, 456 U.S. 152, 164-65 (1982). Actual prejudice can be shown by establishing a reasonable probability of a different outcome on appeal had the issue been raised. *United States v. Fields*, No. 3:14CV-616-JGH, 2015 WL 1259050 (W.D. Ky. March 18, 2015).

## II.

### Law of the Case Doctrine

The first question for the Court in light of the extensive procedural history of the case is whether we are precluded from reaching the merits of Melchizedek's *Johnson* argument given our unchallenged prior ruling that Melchizedek knowingly and voluntarily waived his right to collaterally attack his conviction and sentence by the terms of his plea agreement.  As noted, both the Magistrate Judge and the District Court agreed that Melchizedek was barred by the provisions of ¶ 12 of his plea agreement from pursuing § 2255 relief.[20]  Melchizedek did not appeal this ruling by the District Court.  Further, recent case law of the Sixth Circuit has held that such knowing and voluntary waiver provisions are enforceable to preclude consideration of *Johnson* arguments similar to those now raised by Melchizedek .  *See, United States v. Morrison*, ___ F.3d___, 2017 WL 360553 at *2 (6th Cir. Jan. 25, 2017) ("[C]ourts will enforce appeal waivers even when a legal development makes it likely that the defendant would receive a lower sentence were the defendant resentenced under the new law, and even when the legal change affects constitutional rights.").   It therefore appears to the Court that the law of the case doctrine, if applicable, would preclude Melchizedek from any possibility of obtaining § 2255 relief

The law of the case doctrine provides that '"when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the case.'" *Adkins vs. Regions Morgan Keegan Select High Income Fund, Inc.*, No. 13-2843, 2016 WL 3636300 at *3

---

[20] (DN 101, Report and Recommendation; DN 105 Memorandum Opinion and Order Adopting Recommendation).

(W.D. Tenn. Mar. 9, 2016) (citing *Stryker Corp. v. TIG Ins. Co.*, No 1:05-CV-51, 2014 WL 198678 at *2 (W.D. Mich. Jan. 15, 2014) (quoting *Pepper v. United States*, 131 S. Ct. 1229, 1250 (2011)).

Only when there is an intervening change in the controlling case law, new material evidence, or a finding that the prior decision of the court was clearly erroneous and would work manifest injustice may the Court depart from its past decisions on a particular issue earlier resolved in the same case. *United States v. Moored,* 38 F.3d 1419, 1421 (6th Cir. 1994). These principles of the law of the case doctrine not only apply to decisions made within a single case, but also apply to separate cases that arise from a single action or that are practically identical. *United States v. Corrado*, 227 F.3d 1262, 1266-67 (9th Cir. 1997). The fundamental theory behind the doctrine is that "no litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time." *Adkins*, 2016 WL 3636300 at *3(quoting *Disimone v. Browner*, 121 F.3d 1262, 1266-67 (9th Cir. 1997).

The Sixth Circuit has applied the law of the case doctrine routinely in criminal cases that involve related proceedings brought by defendants and co-defendants who happen to raise the same legal issues in their related direct appeals or in their post-conviction proceedings. For example, the Sixth Circuit applied the doctrine as to co-defendants in a criminal case in *United States v. Hughs*, 505 F.3d 578, 591 (6th Cir. 2007) to reject a subsequent claim regarding jury instructions that had been previously resolved in favor of the government in a prior, related appeal filed by Hughs' co-defendant Blackwell. The doctrine also was earlier applied in *United States v. Wilson*, No 91-1510, 1992 WL 179240 at *8 (6th Cir. July 28, 1992) (Sixth Circuit

panels holdings in the appeals of three co-defendants became the law of the case as to the identical issues raised in the subsequent appeal of a fourth co-defendant).

In *United States vs. Frye*, 202 F3d 270 (6th Cir. 2000) the Sixth Circuit held that three of the five issues raised by defendant Frye had been previously addressed and resolved adversely to her in the expedited appeal of her co-defendant Holloway so that "this Court's rulings on these issues in the Holloway appeal are now the law of the case." *Id*. Other district courts in the Sixth Circuit have applied the law of the case doctrine in post-conviction proceedings, as well. See *United States vs. Corrado*, No 04-CV-72354-DT, 2008 WL 2651421 at 82 (E.D. Mich. June 30, 2008) (applying the law of the case doctrine in a § 2255 criminal proceeding). *See also United States vs. Wilson* 972 F.2d 349 (6th Cir. 1992) (applying the law the case doctrine to an Equal Protection Clause sentencing challenge under the sentencing guidelines where the Sixth Circuit had previously found the argument to be meritless in a prior published opinion on direct appeal of Wilson's three co-defendants).

We see no persuasive reason why the law the case doctrine does not control in the present circumstances as well. Certainly, while *Johnson* may have temporarily called into question the constitutionality of the residual clause found in § 4B1.2(a)(2), until *Beckles* held otherwise, it did not change the law related to the enforcement of knowing and voluntary plea agreement waiver provisions. In fact, the Sixth Circuit in *Morrison* recently held that subsequent changes in the law such as *Johnson* do not invalidate otherwise enforceable waiver provisions found in a defendant's prior plea agreement. *Morrison*, ___ F.3d___, 2017 WL 360553 at *2. In view of this holding, and the failure of Melchizedek to obtain appellate review of this aspect of the prior 2012 decision of the District Court, he is now precluded by the law the case doctrine from having a "second bite of the apple."

10

The Order of the Sixth Circuit that granted Melchizedek leave to bring his successive motion to vacate does not contradict the above conclusion. The Sixth Circuit relied on the standard of 28 USC § 2255(h), which empowers a panel of the Court of Appeals to certify a second or successive motion to vacate which involves "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 USC § 2255(h). Although *Welsh* made *Johnson* applicable to cases on collateral review, we now know post-*Beckles* that the "cases" referred to are those ACCA cases involving 18 USC 924(e)(2)(B)(ii) and not cases involving §§ 4B1.1 and 4B1.2 of the Sentencing Guidelines.

Thus, while the Sixth Circuit at the time understandably desired to afford Melchizedek the benefit of the doubt in so far as *Johnson* was concerned, so as to provide him an opportunity to raise the current arguments, the panel did not speak to the question of whether the prior ruling of the District Court on plea agreement waiver of collateral attack would prevent it from affording relief to Melchizedek on those same arguments. Because no change in the law occurred with respect to the enforcement of knowing and voluntary plea agreement waivers such as that entered into by Melchizedek, and because Melchizedek did not appeal the adverse prior ruling in this respect, the law the case doctrine of itself would prevent him from obtaining § 2255 relief even had the U.S. Supreme Court not done so in *Beckles*.

## III

### The *Beckles* Decision

Even if the law the case doctrine does not apply in light of the June 6, 2016 Order of the Sixth Circuit that granted Melchizedek leave to bring his successive § 2255 motion, he is nevertheless precluded from obtaining relief from his current 180 month sentence given the

11

holding of *Beckles*. On March 6, 2017,  sixteen weeks after the Court on November 14, 2016

granted the government's motion to hold in abeyance, the U.S. Supreme Court rendered its

decision in *Beckles*.  A review of the *Beckles* decision reveals that the defendant, Travis Beckles,

was convicted in the Southern District of Florida in 2007 of being a felon in possession of a

firearm, a sawed-off shotgun, in violation of 18 U.S.C. § 922(g)(1) and was sentenced as a career

offender under the residual clause of § 4B1.2(a)(2) of the U.S. Sentencing Guidelines.  Because

defendant Beckles qualified as a "career offender" under the Guidelines, the District Court

sentenced him to 360 months of imprisonment.  *Beckles,* 137 S.Ct. at 891.

In September 2010, Beckles filed a motion to vacate his sentence pursuant to 28 U.S.C.

2255 initially arguing that his conviction for unlawful possession of a firearm was not a "crime

of violence" so as to qualify him as a career offender under the Guidelines.  *Id.* The District

Court denied this motion and the 11th Circuit Court of Appeals affirmed the denial.  *Id*. While

Beckles' petition for certiorari was pending the Supreme Court rendered its decision in *Johnson*

striking the residual clause of 18 U.S.C. § 924(e)(2)(B)(2) as being void for vagueness in

violation of the Due Process Clause of the U.S. Constitution.  As a result, the Supreme Court

granted Beckles' petition and remanded his case so that he would have the opportunity to argue

that his enhanced sentence under the residual clause of §4B1.2(a) was itself rendered invalid

based on *Johnson*.  *Id*. at 892.

Once again, the 11th Circuit affirmed Beckles' 360-month sentence reasoning that he was

not sentenced under the residual clause of the ACCA, but rather based upon the express language

of the Sentencing Guidelines that classified his offense as a "crime of violence."  *Beckles v.*

*United States*, 616 Fed. Appx.  415, 416 (2015) (per curiam).  Beckles filed another petition for

certiorari to obtain review of his contention that the residual clause of § 4B1.2(a) of the

Sentencing Guidelines was itself void for vagueness given its identical language to that of the ACCA declared to be unconstitutionally vague in *Johnson*.  The Supreme Court granted certiorari to resolve the conflict among the federal Courts of Appeals on the question of whether *Johnson* applied to the residual clause of U.S.S.G.  § 4B1.2(a).

The majority of the Supreme Court concluded that the Sentencing Guidelines "are not amenable to a vagueness challenge."  *Beckles*, 137 S.Ct. at 894.  According to the Court, because the Sentencing Guidelines are merely advisory they "do not implicate the twin concerns underlying vagueness doctrine – – providing notice and preventing arbitrary enforcement."  *Id*. To quote the Court,

> As to notice, even perfectly clear Guidelines could not provide notice to a person who seeks to regulate his conduct so as to avoid particular penalties within the statutory range. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). That is because even if a person behaves so as to avoid an enhanced sentence under the career-offender guideline, the sentencing court retains discretion to impose the enhanced sentence. *See, e.g., Pepper v. United States*, 562 U.S. 476, 501, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011) ("[O]ur post-*Booker* decisions make clear that a district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views"). As we held in *Irizarry v. United States*, 553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008), "[t]he due process concerns that ... require notice in a world of mandatory Guidelines no longer" apply. *Id.*, at 714, 128 S.Ct. 2198; *see id*., at 713, 128 S.Ct. 2198 ("Any expectation subject to due process protection ... that a criminal defendant would receive a sentence within the presumptively applicable Guidelines range did not survive our decision in [*Booker* ], which invalidated the mandatory features of the Guidelines"). All of the notice required is provided by the applicable statutory range, which establishes the permissible bounds of the court's sentencing discretion.
>
> The advisory Guidelines also do not implicate the vagueness doctrine's concern with arbitrary enforcement. Laws that "regulate persons or entities," we have explained, must be sufficiently clear "that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc.,* 567 U.S. 239, 253, 132 S.Ct. 2307, 183 L.Ed.2d 234 (2012); *see also Grayned, supra*, at 108–109, 92 S.Ct. 2294 ("A vague law impermissibly delegates basic policy matters" to judges "for resolution on an ad hoc and subjective basis"). An unconstitutionally vague law invites arbitrary enforcement in this sense if it

"leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case," *Giaccio*, 382 U.S., at 402–403, 86 S.Ct. 518, or permits them to prescribe the sentences or sentencing *895 range available, *cf. Alleyne*, 570 U.S., at ——, 133 S.Ct., at 2160–2161 ("[T]he legally prescribed range is the penalty affixed to the crime").

The Guidelines, however, do not regulate the public by prohibiting any conduct or by "establishing minimum and maximum penalties for [any] crime." *Mistretta*, 488 U.S., at 396, 109 S.Ct. 647 (Sentencing Guidelines "do not bind or regulate the primary conduct of the public"). Rather, the Guidelines advise sentencing courts how to exercise their discretion within the bounds established by Congress. In this case, for example, the District Court did not "enforce" the career-offender Guideline against petitioner. It enforced 18 U.S.C. § 922(g)(1)'s prohibition on possession of a firearm by a felon—which prohibited petitioner's conduct—and § 924(e)(1)'s mandate of a sentence of 15 years to life imprisonment—which fixed the permissible range of petitioner's sentence. The court relied on the career-offender Guideline merely for advice in exercising its discretion to choose a sentence within those statutory limits.

*Beckles,* 137 S. Ct. at 894.  Based on this reasoning, the Supreme Court held "that the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause and that §4B1.2(a)'s residual clause is not void for vagueness." *Id.* at 895.

It is clear given the above-quoted language that any possible Due Process challenge to § 4B1.2(a) that Melchizedek might have potentially had prior to *Beckles* is now extinguished. *United States v Kennedy*, ___ Fed. Appx. ___, 2017 W.L. 1078552 at *6 (6th Cir. Mar. 30, 20017)(rejecting a Due Process challenge for vagueness to the Sentencing Guidelines definition of "crime of violence" under § 2K2.1(a)(3) based on the recent *Beckles* decision.);*United States v. Campbell*, No. CR 5: 14-83-DCR, 2017 WL 1196650, at *1 n.2 (E.D. Ky. Mar. 30, 2017)("The Supreme Court's recent decision in *Beckles v. United States*, No. 15-8544, (U.S. Mar. 6, 2017), 2017 WL 855781, rebuffed *Johnson*-type vagueness challenges to the United States Sentencing Guidelines, and upheld § 4B1.2's residual clause. Therefore, Campbell has no colorable claim for relief under *Johnson* . . . .").

14

Further, to the extent that Melchizedek implicitly suggests that his challenge to KRS 508.060 as a crime of violence survives *Beckles* based on *Mathis v. United States*, ___ U.S. ___, 136 S.Ct. 243 (2016), his *Mathis* arguments are too late where:  (1) Melchizedek filed his current § 2255 motion to vacate on June 22, 2016, more than 5-years after his conviction became final on appeal, 90-days after the Sixth Circuit rendered its opinion on August 31, 2011; and (2) *Mathis* did not announce a "new rule" made retroactive on collateral review so as to extend the one-year period of limitation of 28 USC 2255(f). *See, Atkinson v. United States*, No. 1:16-CV-67, 2017 WL 1227876, at *2 (W.D. Mich. Apr. 4, 2017) ("*Mathis* addressed an issue of statutory interpretation, not a constitutional rule. Because *Mathis* did not announce a new constitutional rule, § 2255(f)(3) does not apply. Thus, Movant had one year from the date his conviction became final to raise this claim . . .").

## CERTIFICATE OF APPEALABILITY

The sole remaining question is whether Melchizedek is entitled to a certificate of appealability (COA). A state or federal prisoner who seeks to take an appeal from the dismissal of a habeas corpus petition or a motion to vacate must satisfy the COA requirements of 28 U.S.C. § 2253(c).  A COA will be issued only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  Such a substantial showing is made when a prisoner establishes that jurists of reason would find it debatable whether the petition or motion states a valid claim of the denial of a constitutional right or, in the cases in which the petition is resolved based upon a procedural ruling, that jurists could find it debatable whether the district court was correct in its procedural ruling.  *See  Buck vs. Davis*, ___ U.S. ___, 137 S.Ct. 759, 773 (Feb.  22, 201)( "At the COA stage, the only question is whether the applicant has

shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'")  (Quoting *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001)(same).

The Court is required to make an individual assessment of the issues and to indicate which specific issue or issues satisfy the standard of § 2253(c).  *See Stanford v. Parker*, 266 F.3d 442, 450-51 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002).  *See also Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (discussing 28 U.S.C. § 2253(c)).  A prisoner may raise on appeal only those specific issues for which the district court grants a certificate of appealability.  *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003).

Here, no reasonable jurists could debate whether Melchizedek has stated valid claims. All of his arguments, even if assumed to be timely, have been expressly rejected on their merits by published and unpublished decisions of the Sixth Circuit, as well as, by the recent decision of the U.S. Supreme Court in *Beckles*. For this reason, Melchizedek should be denied a certificate of appealability as to all issues raised.


**RECOMMENDATION**

The Magistrate Judge having made findings of fact and conclusions of law recommends that the motion to vacate, set aside or correct be dismissed with prejudice and that the movant be denied a certificate of appealability for the reasons set forth above.

## NOTICE

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived.  *Thomas v. Arn,* 474 U.S. 140, 150-51 (1985); *United States v. Walters*, 638 F.3d 947, 949-50 (6th Cir. 1981); 28 U.S.C. § 636(b)(1)(c); Fed. R. Crim. P. 59(b)(2)


Cc:      Defendant and Counsel of Record.